UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BIANCA P. UDUGAMPOLA, *et al.*,

    Plaintiffs

    v.

JANICE JACOBS,
Assistant Secretary for Consulate Affairs
U.S. Department of State, *et al*.,

    Defendants.

Civil Action No. 09-1321 (BAH)
Judge Beryl A. Howell.

# MEMORANDUM OPINION

This case arises out of the United States Department of State's decision to deny a Sri Lankan citizen an immigration visa on grounds that he allegedly engaged in terrorist activities. Plaintiff Bianca Udugampola, a United States citizen, filed an I-130 Petition for Alien Relative on behalf of her father Premadasa Udugampola (hereinafter "Mr. Udugampola" or "the applicant"). Although this petition was approved, the United States Consulate subsequently denied Mr. Udugampola's application for an immigration visa after determining that he was ineligible for admittance under Section 212(a)(3)(B) of the Immigration and Nationality Act (hereinafter "INA") for allegedly participating in terrorism. The applicant,[1] the applicant's daughter, Bianca Udugampola, and the applicant's wife, Somie Udugampola, now bring suit against Janice Jacobs, Assistant Secretary for Consular Affairs at the U.S. Department of State,

---

[1] Plaintiffs state that Mr. Udugampola, as a citizen and resident of Sri Lanka, is a symbolic plaintiff in this case. Am. Compl. ¶ 9. It is beyond dispute that Mr. Udugampola has no constitutional right to enter the United States and also does not have standing to seek review of his visa denial. *See Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972) (non-resident alien visa applicant has no constitutional right to a visa); *Adams v. Baker*, 909 F.2d 643, 647 n.3 (1st Cir. 1990); *United States ex rel. Knauff v. Shaughnessy,* 338 U.S. 537, 542 (1950); *Centeno v. Shultz,* 817 F.2d 1212 (5th Cir.1987).

1

David Donahue, Deputy Assistant Secretary for Visa Services, and Christopher R. Green, Consul General of the U.S. Embassy in Colombo, Sri Lanka, asserting that the defendants failed to supply a facially legitimate and bona fide reason for denying Mr. Udugampola's visa application and thereby violated the applicant's wife and daughter's Fifth Amendment Due Process rights. The defendants have moved to dismiss the plaintiffs' Complaint for lack of subject matter jurisdiction and for failure to state a claim. For the reasons set forth below, the defendants' motion to dismiss is granted.

**I.   BACKGROUND**

According to the Amended Complaint, Mr. Udugampola is a Sri Lankan citizen and was a Sri Lankan police officer from 1957 to 1992, rising to become Deputy Inspector General of the Police before retiring. Am. Compl. ¶ 31. Mr. Udugampola's wife, Somie Udugampola (hereinafter "the applicant's wife"), has resided in the United States since 1989. *Id.* ¶ 8

On February 23, 1995, a United States Immigration Judge granted the applicant's wife and her four children asylum in the United States.[2] *Id.* Shortly thereafter, on March 22, 1995, the applicant's wife filed a Form I-730 Refugee/Asylee Relative Petition with the Immigration and Natural Service (hereinafter "INS") on behalf of her husband.[3] *Id.* ¶ 14. On May 10, 1995, the INS approved this petition and forwarded it to U.S. Embassy in Colombo, Sri Lanka (hereinafter "the Consulate"). *Id.* The Consulate allegedly refused to act on the petition, and approximately four years later, returned the petition to the INS. *Id.*

On September 15, 1999, the INS revoked and denied the applicant's wife's previously

---

[2] The applicant's wife became a lawful permanent resident of the United States on December 3, 2006. Am. Compl. ¶ 8.

[3] A form I-730 is used by an alien admitted to the United States as a refugee or granted status as an asylee, which once granted, confers follow-to-join benefits on a child, under 21 years of age, or spouse of a person granted asylum pursuant to 8 C.F.R. § 208.21(c).

approved I-730 petition for her husband, stating that the applicant was ineligible for derivative asylum, under 8 C.F.R. § 208.19, for allegedly having "ordered, incited, assisted, or otherwise participated in the persecution of any persons on account of race, religion, nationality, membership in a particular social group, or political opinion" as a Deputy Inspector General of Police in the Southern Province of Sri Lanka. *Id.* ¶ 15.

On September 5, 2003, four years after the INS denied the applicant's wife's I-730 petition on behalf of her husband, the applicant's daughter, Bianca Udugampola (hereinafter "the applicant's daughter"), filed a Form I-130 Petition for Alien Relative with the United States Citizenship and Immigration Services (hereinafter "USCIS") on her father's behalf.[4] *Id.* ¶ 1. The USCIS approved the applicant's daughter's I-130 petition on April 23, 2004, and forwarded it to the Consulate for processing and the scheduling of an immigrant visa interview. On December 2, 2004, the applicant appeared for his immigrant visa interview at the Consulate, after which he was instructed to return to the Consulate on January 6, 2005. *Id.* When he returned on the scheduled date, the applicant was informed that a decision would be made "in due course." *Id.*

The plaintiffs allege that over the next four and a half years they repeatedly inquired about the status of the applicant's visa application but received no answer from the Consulate. *Id.* ¶ 17. On April 27, 2009, plaintiffs' counsel emailed the State Department, and received a response stating that the State Department was going to urge the Consulate to "take another look at the case and take appropriate action." E-mail from Ragland Thomas to Legalnet (Apr. 27, 2009 13:54 EST).

---

[4] A form I-130 Petition for Alien Relative is a family-based avenue for obtaining an immigration visa. A family member that is either a United States citizen or lawful permanent resident may file a Form 1-130 as the petitioner on behalf of the beneficiary, the alien relative who is attempting to gain entry into the United States pursuant to 8 U.S.C. § 151(b)(2)(A)(i). Am. Compl. ¶ 16.

On July 16, 2009, the applicant's daughter and the applicant filed a Complaint in this Court seeking mandamus and declaratory relief to compel the Consulate to render a decision on the applicant's immigrant visa application. *Id ¶* 18. Two months later, on September 24, 2009, prior to a ruling on the plaintiff's request for a writ of mandamus, the Consulate denied the applicant's immigrant visa application in a one-page decision, which read:

> Dear Visa Applicant:
>
> This office regrets to inform you that it is unable to issue a visa to you because you have been found ineligible to receive a visa under the following sections of the Immigration and Nationality Act. Section 212(a)(3)(B). Terrorism.
>
> Sincerely yours,
> /signed/ Joel T. Wiegert
> Vice Consul
> United States of America

*Id.* ¶ 19; *id.*, Ex. 5.

On November 12, 2009, plaintiffs filed an Amended Complaint, adding as a plaintiff the applicant's wife, and asserting that the Consulate's denial of the applicant's visa application on terrorism-related grounds is "entirely conclusory, has no evidentiary basis, and is legally and factually inapplicable to [the applicant], a state actor who has never engaged in or supported terrorist activities." *Id.* ¶ 36. Moreover, because the Consulate "failed to proffer a facially legitimate and bona fide reason for excluding the applicant from the United States, [] the visa denial is a violation of the Plaintiffs' rights to constitutionally adequate procedures for visa adjudication under the Due Process Clause." *Id.* The plaintiffs request the Court to declare that the defendants' denial of an immigrant visa and a waiver of inadmissibility[5] to the applicant

---

[5] The plaintiffs state that they do not seek review of the Attorney General's decision not to grant the applicant a terrorism-related waiver of inadmissibility under 8 U.S.C. § 1182(d)(3), acknowledging that "a discretionary 'decision or action' by the Attorney General is not subject to judicial review under 8 U.S.C. § 1252(a)(2)(B)(ii)." Pls.' Opp'n Mot. Dismiss (hereinafter Pls.' Opp'n Mem.), ECF No. 15, at 24. Plaintiffs "contend only that [the

violates the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act, and to enjoin the defendants from relying upon 8 U.S.C. § 1182(a)(3)(B) as a basis to exclude the applicant from the United States.

On December 22, 2009, the defendants moved to dismiss the Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim pursuant Federal Rule of Civil Procedure 12(b)(6).[6] Defs.' Mot. Dismiss, ECF No. 13, at 1. For the following reasons, the defendants' motion is granted and the plaintiffs' claims are dismissed.

## II. ANALYSIS

### A. Standards of Review

*1. Motion to Dismiss for Lack of Subject Matter Jurisdiction*

Pursuant to Federal Rule of Civil Procedure 12(b)(1), the defendants seek to dismiss the Amended Complaint on grounds that the Court lacks subject matter jurisdiction over the plaintiffs' claims. Federal courts are fora of limited jurisdiction, only possessing the power authorized by the Constitution and statutes. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted). Therefore, when a defendant brings a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), "the [p]laintiff bears the burden of establishing by a preponderance of the evidence that the Court possesses jurisdiction."

---

applicant] is deserving of consideration for a discretionary waiver under § 1182(d)(3), and that the Consulate has violated the due process rights of his U.S. sponsors by failing even to consider him for such a waiver of inadmissibility." *Id.*

[6] This case was re-assigned to the current presiding Judge on January 21, 2011.

*Hollingsworth v. Duff*, 444 F. Supp. 2d 61, 63 (D.D.C. 2006) (citing *Shekovan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). In evaluating the basis for jurisdiction, the Court "assume[s] the truth of all material factual allegations in the complaint and construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged, and upon such facts determine jurisdictional questions. *American Nat. Ins. Co. v. F.D.I.C.*, No. 10-cv-5245, 2011 WL 2506043, at *1 (D.C. Cir. June 24, 2011) (internal citations and quotations omitted). Nevertheless, "the court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiffs' legal conclusions." *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006). In deciding a motion to dismiss for lack of subject matter jurisdiction, a court is not limited to the allegations set forth in the complaint, "but may also consider material outside of the pleadings in its effort to determine whether the court has jurisdiction in the case." *Alliance for Democracy v. FEC*, 362 F. Supp. 2d 138, 142 (D.D.C. 2005); *see also Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992).

2. *Motion to Dismiss for Failure to State a Claim*

The defendants also argue that the Court should dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) because the plaintiffs have failed to state a claim. To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[ ] [his or her] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); FED. R. CIV. P. 12(b)(6). Although detailed factual allegations are not required, the Complaint must set forth "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009),

6

and may not merely state "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Instead, the complaint must plead facts that are more than "merely consistent with" a defendant's liability; "the plaintiff [must plead] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 556).

### B. Discussion

Both sides to this litigation agree that the doctrine of consular nonreviewability generally precludes judicial review of Executive Branch decisions both to deny an entry visa and to decline to issue a waiver of admissibility. Defs.' Mot. Dismiss, at 6-8; Pls. Opp'n Mem., at 1. The plaintiffs argue, however, that their claim falls within the narrow exception permitting judicial review of certain consular decisions that result in violation of cognizable constitutional rights of a U.S. citizen. Pls.' Opp'n Mem., at 6. Specifically, the applicant's wife and daughter contend that the defendants violated their Fifth Amendment due process rights when they denied the applicant's visa application without a facially legitimate or bona fide reason and thereby adversely affected the plaintiffs' protected liberty interest in marriage and family life. *Id.* at 11. The Court concludes that the applicant's daughter and wife, even if the latter had standing, cannot demonstrate that the defendants' denial of the visa implicated a constitutionally protected interest. Consequently, the plaintiffs have failed to demonstrate that they are entitled to limited judicial review of the reasons underlying the visa denial decision. Even assuming, *arguendo*, that the plaintiffs were entitled to this limited judicial review, the plaintiffs would nonetheless fail to state a claim because the defendants would be able to show a legitimate basis for denying the applicant's visa application.

*1. The Court Lacks Subject Matter Jurisdiction To Review Plaintiffs' Claims*

The power to control entry into the United States is "exercised exclusively by the political branches of government" and judicial review of such matters is extremely limited. *Kleindienst v. Mandel,* 408 U.S. 753, 765 (1972); *see also Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 210 (1953) ("[T]he power to expel or exclude aliens [i]s a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control."); *Adams v. Baker*, 909 F.2d 643, 647 (1st Cir. 1990) ("Nowhere is the scope of judicial inquiry more limited than in the area of immigration legislation.") (citations omitted). Indeed, "any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government." *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999) (quoting *Harisiades v. Shaughnessy,* 342 U.S. 580, 588-89 (1952)). Courts have therefore long-held that "[s]uch matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *Id.*

Given the inherent political nature of matters of immigration and the absence of any statute authorizing judicial review, courts consider the Executive's decision to exclude an alien essentially nonreviewable under what has become known as the consular nonreviewability doctrine. *See Saavedra Bruno*, 197 F.3d at 1159. Based on this doctrine, "a consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise." *Id.* at 1159-1160; *see also United States ex rel. Knauff v. Shaughnessy,* 338 U.S. 537, 543 (1950) ("[I]t is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude an alien."); *Li Hing of Hong Kong, Inc. v. Levin*, 800 F.2d 970, 970 (9th Cir. 1986) ("The doctrine of

8

nonreviewability of a consul's decision to grant or deny a visa stems from the Supreme Court's confirming that the legislative power of Congress over the admission of aliens is virtually complete.").

The consular nonreviewability doctrine, however, does not completely bar judicial review of immigration decisions. In *Kleindienst v. Mandel*, 408 U.S. 753 (1972), the Supreme Court considered the merits of a First Amendment challenge by U.S. citizens to the Attorney General's visa waiver denial for a Belgian journalist who was invited to the country for a speaking tour. The Court ultimately rejected the challenge upon finding that the denial was facially legitimate and made for a bona fide reason, explaining "when the Executive exercises the power [to deny a waiver] on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the First Amendment interests of those who seek personal communication with the applicant." *Kleindienst*, 408 U.S. at 770. When presented with a similar case, the D.C. Circuit noted that "presumably, had the [Supreme] Court harbored doubts concerning federal court subject matter jurisdiction in *Mandel,* it would have raised the issue on its own motion." *Abourezk v. Reagan*, 785 F.2d 1043, 1050 (D.C. Cir. 1986) (hereinafter "*Abourezk II*").

Following *Mandel,* this Circuit—along with the First, Second, and Ninth Circuits— has held that a limited exception to the doctrine of consular nonreviewability exists where a U.S. citizen or legal resident plaintiff asserts that the visa decision violates a constitutionally protected liberty interest.[7] *See id.* at 1061-62 ("The Executive has broad discretion over the admission and

---

[7] The defendants argue that *Mandel* review is limited to waiver decisions made by the Attorney General and does not extend to the Consulate's visa determinations, a position strongly disputed by the plaintiffs. Defs.' Mot. Dismiss, at 6-7. Circuit courts addressing the issue, including the D.C. Circuit, have uniformly held that *Mandel* review may be applied to Consulate visa denials, however. *See Abourezk II*, 785 F.2d 1043 (D.C. Cir. 1986) (applying *Mandel* review to First Amendment challenge of consulate's visa denial decision); *see also Am. Acad. of Religion II*, 573

exclusion of aliens, but that discretion is not boundless. It extends only as far as the statutory authority conferred by Congress and may not transgress constitutional limitations. It is the duty of the courts, in cases properly before them, to say where those statutory and constitutional boundaries lie."); *see also Saavedra Bruno v. Albright*, 197 F.3d 1153, 1163 (D.C. Cir. 1999); *Adams v. Baker*, 909 F.2d 643, 647-48 (1st Cir. 1990); *American Academy of Religion v. Napolitano*, 573 F.3d 115, 126 (2d Cir. 2009) (hereinafter "*Am. Acad. of Religion II*"); *Bustamante v. Mukasey*, 531 F.3d 1059, 1062 (9th Cir. 2008). That said, this Circuit has been very clear that the doctrine of consular nonreviewability is the rule not the exception. *See Saavedra Bruno*, 197 F.3d at 1162 ("[T]he *Abourezk* court did not take issue with the longstanding judicial practice of refusing to review [visa denial] claims like those raised here at the behest of a disappointed alien.")(internal citations and quotations omitted). Thus, in order to obtain judicial review of the Executive's denial of a visa application or waiver decision, the plaintiffs must demonstrate that the visa denial adversely implicated an interest protected by the Constitution. *See id.* at 1163-64 (dismissing claims for lack of subject matter jurisdiction where plaintiffs "asserted no constitutional claims.").

As previously noted, the plaintiffs do not dispute that the doctrine of consular nonreviewability generally precludes review of visa decisions. Nonetheless, they claim to be entitled to "limited judicial review" of the Consulate's decision because the visa denial adversely affects their protected liberty interest in "freedom [of] personal choice[s] in 'matters of marriage

---

F.3d 115, 124 (2d Cir. 2009) (stating that "it seems counterintuitive to review a cabinet officer's discretionary decision, but not a consular officer's decision as to statutory ineligibility. We agree with the explicit view of the Ninth Circuit and the implicit views of the First and D.C. Circuits supporting at least limited review where a visa denial is challenged on First Amendment grounds."); *Bustamante*, 531 F.3d 1059, 1062 n.1 (9th Cir. 2008) ("We are unable to distinguish *Mandel* on the grounds that the exclusionary decision challenged in that case was not a consular visa denial, but rather the Attorney General's refusal to waive Mandel's inadmissibility. . .The Supreme Court said nothing to suggest that the reasoning or outcome would vary according to which executive officer is exercising the Congressionally-delegated power to exclude."); *Adams v. Baker*, 909 F.2d 643, 647-50 (1st Cir. 1990) (applying *Mandel* review to First Amendment challenge of Consulate's visa denial decision).

and family life,'" which was violated when the Consulate allegedly failed to provide a facially legitimate and bona fide reason for denying the applicant's immigrant visa application. Am. Compl., ¶ 28.

The plaintiffs base their asserted constitutionally-protected interest in the Fifth Amendment's Due Process Clause. The Fifth Amendment prohibits the government from depriving persons of "life, liberty, or property, without due process of law." U.S. Const. amend. V. The Due Process Clause protects not only United States citizens, but also aliens physically present in the country. *Mathews v. Diaz,* 426 U.S. 67, 77 (1976). To maintain a procedural due process claim, the plaintiffs must establish that the government has deprived them of a liberty interest. *Gen. Elec. Co. v. Jackson,* 610 F.3d 110, 117 (D.C. Cir. 2010) ("Only after finding the deprivation of a protected interest do[es] [the Court] look to see if the government's procedures comport with due process," quoting *Amer. Mfrs. Mut. Ins. v. Sullivan,* 526 U.S. 40, 59 (1999)). To establish a liberty or property interest, the plaintiffs must demonstrate that the Constitution or a federal or state statute grants them a protected right. *Doe v. U.S. Dep't. of Justice*, 753 F.2d 1092, 1124 (D.C. Cir.1985) ("[T]he interests that are comprehended within the meaning of either liberty or property, as covered by the due process clause of the Constitution, are those interests which have attain[ed] constitutional status by virtue of the fact that they have been initially recognized or protected by state law or federal law," citing *Paul v. Davis*, 424 U.S. 693, 711 (1976)).

While the plaintiffs are correct that "freedom of personal choice in matters of marriage and family life is a liberty interest protected by the Due Process Clause," *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 639-40 (1964), their constitutional rights are not implicated in this case. The applicant's adult daughter does not have a constitutionally protected interest in

11

maintaining a relationship with her father. *See Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 27 (D.D.C. 2007) (holding that parent had no constitutionally protected interest in maintaining relationship with adult son). The Supreme Court has recognized that parents enjoy a constitutionally protected liberty interest in maintaining a relationship with their *minor* children. *See generally Stanley v. Illinois*, 405 U.S. 645, 651 (1972) ("The Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed essential, basic civil rights of man, and rights far more precious . . . than property rights.")(internal citations and quotations omitted); *Troxel v. Granville,* 530 U.S. 57, 65 (2000) (plurality opinion) (O'Connor, J.) ("the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court."). However, "no court has held that a parent possesses a constitutionally protected liberty interest in maintaining a relationship with his adult child free from indirect government interference. Rather, all circuits to address the issue have expressly declined to find a violation of the familial liberty interest where state action has only an incidental effect on the parent's relationship with his adult child, and was not aimed specifically at interfering with the relationship." *Al-Aulaqi*, 727 F. Supp. 2d at 26 (citing cases) (internal quotations omitted).

Indeed, the D.C. Circuit has noted that "a parent does not have a constitutionally protected liberty interest in the companionship of a child who is past minority and independent." *Butera v. District of Columbia*, 235 F.3d 637, 656 (D.C. Cir. 2001).[8] The applicant's daughter's interest in maintaining a relationship with her father in the United States is therefore not a recognized protected constitutional interest. Thus, lacking a liberty interest protected by the

---

[8] The conclusion that the applicant's daughter's constitutional rights are not implicated is further bolstered by the fact that the denial of the parent's visa has no legal effect on the adult child because "it does not deprive [the adult child] of the right to continue to live in the United States, nor does it deprive them of any constitutional rights." *Garcia v. Boldin*, 691 F.2d 1172, 1183 (5th Cir. 1982) (citing *Swartz v. Rogers*, 254 F.2d 338 (D.C. Cir. 1958)).

Constitution, the applicant's daughter does not fall into the narrow exception carved by *Mandel* and the Court does not have subject matter jurisdiction to review her claim.

Similarly, the Court does not have subject matter jurisdiction to review the claims asserted by the applicant's wife.[9] The Constitution certainly protects an individual's right to marry and the marital relationship. *See Griswold v. Conn.,* 381 U.S. 479. 495 (1965) ("The entire fabric of the Constitution and the purposes that clearly underlie its specific guarantees demonstrate that the rights to marital privacy and to marry and raise a family are of similar order and magnitude as the fundamental rights specifically protected."); *Meyer v. Nebraska*, 262 U.S. 390, 399-400 (1923) ("Without doubt, [liberty] denotes not merely freedom from bodily restraint but also the right of the individual . . . to marry, establish a home and bring up children. . ."). Courts have repeatedly held that these constitutional rights are not implicated when one spouse is removed or denied entry into the United States, however. *Swartz v. Rogers*, 254 F.2d 338, 339 (D.C. Cir. 1958) ("Certainly deportation would put burdens upon the marriage. It would impose upon the wife the choice of living abroad with her husband or living in this country without him. But deportation would not in any way destroy the legal union which the marriage created. The physical conditions of the marriage may change, but the marriage continues. Under these circumstances we think the wife has no constitutional right which is violated by the deportation of her husband."); *see also Bangura v. Hansen*, 434 F.3d 487, 496 (6th Cir. 2006) ("A denial of an immediate relative visa does not infringe upon [the] right to marry. . . .[T]he Constitution does not recognize the right of a citizen [spouse] to have his or her alien [spouse] remain in the country," citing *Almario v. Attorney General*, 872 F.2d 147, 151 (6th Cir. 1989));

---

[9] The parties dispute whether the applicant's wife has standing to assert her procedural due process claims since she did not file the I-130 Alien Relative petition, which was filed only by the applicant's daughter. The Court, however, need not resolve this issue because, even if the applicant's wife had standing, the Court nonetheless lacks subject matter jurisdiction over her claims.

*Burrafato v. U.S. Dep't of State*, 523 F.2d 554 (2d Cir. 1975) (reaffirming that "no constitutional right of a citizen spouse is violated by deportation of his or her alien spouse," citing *Noel v. Chapman*, 508 F.2d 1023, 1027-28 (2d Cir. 1975)); *Movimiento Democracia, Inc. v. Chertoff*, 417 F. Supp. 2d 1350, 1353 (S.D. Fla. 2006) ("[T]here is no statutory or constitutional right to familial association with a person trying to immigrate to the United States. On the contrary, various cases have shown that neither United States citizens nor lawful permanent residents have any due process or equal protection rights insofar as the deportation of their spouses or other family members."). *But see Bustamante,* 531 F.3d at 1062 (9th Cir. 2008) (engaging in *Mandel* review because a U.S. citizen spouse has "a protected liberty interest in her marriage that gives rise to a right to constitutionally adequate procedures in the adjudication of her husband's visa application"); *Din v. Clinton*, No. C-10-0533, 2010 WL 2560492, at *3 (N.D. Cal. June 22, 2010) (relying on *Bustamante* and stating that plaintiff was entitled to *Mandel* review because she had "a protected interest in her marriage, which gives rise to a right to challenge the constitutionality of the procedures used in the consideration of her husband's visa application"). The defendants' denial of the applicant's visa application does not infringe upon the applicant's wife's marital relationship with her husband because the defendants have "done nothing more than to say that the residence of one of the marriage partners may not be in the United States." *Silverman v. Rogers*, 437 F.2d 102, 107 (1st Cir. 1970) (stating that there was "no merit" in contention that government was "destroying" plaintiff's marriage by refusing to allow spouse the right to live in the United States).

The Court concludes that the defendants' denial of the applicant's visa did not implicate a liberty interest protected by the Fifth Amendment, the plaintiffs claim therefore does not fall into the narrow exception to the consular nonreviewability doctrine. Accordingly, the Court does not

14

have subject matter jurisdiction to review the defendants' denial of the visa application.

    2. *The Amended Complaint Must Be Dismissed for Failure to State a Claim*

    As explained in the preceding section, the Court lacks subject matter jurisdiction to adjudicate the plaintiffs' claims. Assuming, *arguendo*, that the plaintiffs' constitutional rights were implicated by the defendants' denial of Mr. Udugampola's visa application, and thus warranted judicial review, the Amended Complaint would nonetheless be dismissed because the plaintiffs have failed to state a claim.

    When constitutional rights are implicated by the exclusion of aliens from the United States, and "the Executive exercises this power [] on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion nor test it by balancing its justification" against constitutional interests. *See Mandel*, 408 U.S. at 770; *see also Bustamante*, 531 F.3d at 1062. In conducting *Mandel* review, "a reviewing court need only satisfy itself that the conduct alleged fits within the statutory provisions relied upon as the reason for the visa denial, or may determine if there is evidence that either supports the reason or at least supports the consular officer's reasonable belief that the reason exists." *Am. Acad. of Religion II*, 573 F.3d at 134 (citing 8 U.S.C. § 1201(g)). The defendants have provided a legitimate reason that appears to have evidentiary support for the visa denial decision. Thus, even were this Court to have jurisdiction to review the Consulate's visa denial decision, the Amended Complaint would be dismissed because the plaintiffs have failed to support their claim that the Consulate's decision was not facially legitimate and bona fide.

    The Consulate denied the applicant's visa in 2009 under Section 212(a)(3)(B) of the INA, 8 U.S.C. §1182(a)(3)(B), which authorizes the government to exclude those implicated in terrorist-related activity. The reason proffered in 2009 was consistent with the earlier 1999 denial

of the applicant's asylum application for his actions as Deputy Inspector General of the Sri Lankan police and alleged participation in the persecution of other persons. Am. Compl., ¶ 15. By providing the applicant the statutory basis for the denial of his visa, the defendants provided a facially legitimate justification. *See Bustamante*, 531 F.3d at 1062 (consulate informing applicant that they "'had reason to believe' that he was a controlled substance trafficker [was] 'plainly a facially legitimate reason, as it is a statutory basis for inadmissibility.'"); *Din*, 2010 WL 2560492, at *3 (providing statutory basis for visa denial constituted a facially legitimate reason for denial). Although the plaintiffs argue that the defendants must do more than merely cite to a statutory provision, Am. Compl. ¶ 26, the INA states clearly that the defendants need not provide an applicant even the statutory basis for denial if the reason for denial is based under Sections 212 (a)(2) or (a)(3). 8 U.S.C. §1182(b)(3). As the asserted statutory basis for the denial of Mr. Udugampola visa was Section 212 (a)(3)(B), 8 U.S.C. §1182(a)(3)(B), the defendants were entitled to withhold from the plaintiffs even the information that they did provide.

Additionally, the plaintiffs are unable to allege that the defendants' denial of the applicant's visa was not based on a bona fide rationale. Courts have held that where the consulate provides a statutory basis for denial, a legal challenge to the visa denial must be dismissed unless a plaintiff alleges that the consulate acted in bad faith. *Bustamante*, 531 F.3d at 1062-1063; *Amer. Acad. of Religion II*, 573 F.3d at 137; *Din*, 2010 WL 2560492, at *3. Plaintiffs allege that the Consulate's decision was not bona fide because, pursuant to 8 U.S.C. § 1201(g), the Consulate may only deny a visa application when a consulate officer "knows or has reason to believe" that the applicant is ineligible to receive a visa. This requires "a determination based upon facts or circumstances which would lead a reasonable person to conclude that the applicant is ineligible to receive a visa." 22 C.F.R. § 40.6. Plaintiffs therefore assert that "absent

16

'facts or circumstances' sufficient to support a "reasonable conclusion" that a visa applicant is excludable on a particular ground, the Consulate has breached its legal duty to adjudicate in good faith the alien's visa application." Pls.' Opp'n Mem. at 21.

In response, the defendants assert that the "plaintiff cannot point to any evidence even suggesting that the consular did or had any motivation to act in an arbitrary or capricious fashion." Defs.' Reply, ECF No. 17, at 12. Moreover, "although the Consulate by no means predicated its determination upon publicly available news sources," the defendants relay at least two newspaper articles in the public record which support the defendants' contention that the Consulate's denial of the applicant's visa was based on a bona fide rationale. *Id.* Specifically, a 1989 Los Angeles Times article reports on the applicant's alleged involvement in atrocities committed during the on-going Sri Lankan civil war, stating: "Behind the escalating carnage in Kandy is a new dimension to the war, a single man. He is the new police chief in the region, handpicked by President [Ranasinghe Premadasa] to implement his new get-tough policy in the country's key central regions." Mark Fineman, *Death Squads Tear at Fabric of Sri Lanka*, L.A. TIMES, Oct. 29, 1989, at A1. The article further reports that "[the applicant] has led an elite squad of similarly motivated men on a singular mission--to wipe out the insurgency at whatever human cost." *Id.* A second news report indicated that the applicant was perhaps involved in "government death squads [which] killed nearly 40,000 people in a crackdown on left-wing rebels" and that Mr. Udugampola was forced to retire "after foreign aid donors and human rights groups accused him of involvement in the killings." *See Sri Lankan Dissident Reported on Way to Canada*, TORONTO STAR, July 27, 1992, at A11. Although this publicly available information certainly does not prove that the applicant participated in such terrorism-related acts, it is

17

sufficient to show that the Consulate had a bona fide basis to reach this conclusion.[10]

Apparently aware of the press reports linking the applicant to brutal and widespread human rights abuses in Sri Lanka, the plaintiffs contend that as a legal matter 8 U.S.C. §1182(a)(3)(B) does not apply to state actors who are performing their duties as officials on behalf of a sovereign nation. Pls.' Opp'n Mem., at 22. This argument has no basis in law or statute. Under 8 U.S.C. §1182(a)(3)(B)(iii), "terrorist activity" is defined as "any activity which is unlawful under the laws of the place where it is committed (or which, if it had been committed in the United States, would be unlawful under the laws of the United States or any State)." By its plain terms the statute provides no exception for those acting in their capacity as officials or officers of foreign nations.

## III.    CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim is granted. The plaintiffs' Amended Complaint is dismissed. An Order consistent with this Memorandum Opinion will be entered.

**DATED: JULY 8, 2011**

/s/ *Beryl A. Howell*
BERYL A. HOWELL
United States District Judge

---

[10] Courts differ regarding the level of evidentiary inquiry necessary under *Mandel* review. *Compare Am. Acad. of Religion II*, 573 F.3d at 137 (concluding that the court must "take literally the statement in *Mandel* that courts may not look behind exclusion decisions, whether the decision is the Attorney General's exercise of discretion to waive inadmissibility or the consular officer's decision that a statutory ground of inadmissibility applies to the visa applicant, at least in the absence of a well-supported allegation of bad faith, which would render the decision not bona fide.") (internal quotations omitted) *and Bustamante*, 531 F.3d at 1062 (finding factual inquiry as to whether the visa applicant was a drug trafficker inappropriate where the plaintiff did not allege bad faith and the Consulate had reason to believe he was a controlled substance trafficker) *with Adams*, 909 F.2d at 649 (engaging in limited evidential inquiry to determine if there was sufficient evidence for Consulate to reasonably believe that applicant's visa should be denied) *and Abourezk II*, 785 F.2d at 1060-61 (reprimanding district court for relying on *ex parte in camera* evidence, without providing the plaintiffs an opportunity to rebut such evidence, as the basis for upholding Consulate's visa denial). The Court need not delve further into the evidentiary basis for the defendants' denial of the applicant's visa because the information on the public record is enough to support the conclusion that the Consulate had a reasonable belief that denial of the visa was necessary.